UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RHONDA M. PALMER,**

       **Plaintiff,**                          **CIVIL ACTION NO. 16-cv-11134**

       **v.**                                **MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]

Plaintiff Rhonda M. Palmer seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 18). Plaintiff has also filed a reply brief in support of her Motion for Summary Judgment. (Docket no. 19.) With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 16.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on July 7, 2014, and June 13, 2014, respectively,

alleging that she has been disabled since November 22, 2009, due to bipolar disorder, anxiety, hypertension, depression, Attention Deficit Disorder (ADD), obesity, back problems, carpal tunnel syndrome in both hands, high blood pressure, nerve damage, arthritis throughout her entire body, and neck problems. (TR 132-33, 194-97, 218.) The Social Security Administration denied Plaintiff's claims on November 24, 2014, and Plaintiff requested a *de novo* hearing. (TR 100-33, 149.) On September 17, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Kendra S. Kleber, at which she amended her alleged onset date to May 2, 2014. (TR 35-80.) In a November 10, 2015 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 11-28.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## II. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 5-8), Defendant (docket no. 18 at 4-15), and the ALJ (TR 19-25, 27-28) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Opinion and Order.

## III. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of May 2, 2014, and that Plaintiff suffered from the following severe impairments: degenerative joint disease, right carpal tunnel syndrome, obesity, attention deficit hyperactivity disorder (ADHD), affective disorder, and anxiety disorder. (TR 15-16.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 16-18.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> Ms. Palmer has the residual functional capacity to perform less than light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). Specifically, at best she is able to lift or carry up to 20 pounds occasionally or 10 pounds frequently. She can stand or walk up to six hours of an eight-hour workday for 30 minutes at a time. She can sit up to six hours of an eight-hour workday for 60 minutes at a time. She can occasionally climb stairs or ramps, but not ladders or scaffolds. She can occasionally balance, stoop, crouch, crawl, or kneel. She can frequently handle or finger with her bilateral upper extremities. The work she can perform does not involve exposure to hazards such as unprotected heights or uncovered industrial machinery. She can perform simple, routine, repetitive tasks in an environment involving occasional and superficial interaction with the public, coworkers, or supervisors. The work she can perform is routine and predictable, defined as performing the same tasks in the same place, each day.

(TR 19-25.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 27-28.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from May 2, 2014, through the date of the decision. (TR 28.)

## IV. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

> (3) the impairment met or was medically equal to a "listed impairment;" or
>
> (4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. §

405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be remanded under sentence four because (1) "[t]he ALJ erred by failing to give good reasons for rejecting the opinions of Drs. Jilani and Ezziddine;" and (2) "[s]ubstantial evidence fails to support the RFC for a restricted range of light work." (Docket no. 14 at 10-21.)

### 1. *The ALJ's Assessment of the Medical Opinion Evidence*

It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient

that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

    a.  <u>Muhammad S. Jilani, M.D.</u>

Plaintiff treated with Muhammad S. Jilani, M.D. for her physical impairments from September 2013 to September 2014. (TR 425-75.) Dr. Jilani rendered an opinion regarding the

functional limitations resulting from Plaintiff's impairments (TR 476-78), which the ALJ assessed as follows:

> [O]n September 8, 2014, Dr. Jilani opined that Ms. Palmer should not lift more than five or ten pounds. She should not sit, stand, or walk for more than fifteen to thirty minutes. She could never climb ladders and must avoid frequent bending and twisting. He further noted that she could only drive short distances, lay down for a "short period," and had difficulty climbing steps (Exhs. B7F, p. 24-25; B8F, p. 1; B11F, p. 33). Dr. Jilani's opinion is inconsistent with his own exam findings that revealed Ms. Palmer presented in only mild discomfort, retained normal range of motion, demonstrated full strength in all extremities, and ambulated with an independent gait without an assistive device (Exh. B7F, p. 25). He was able to review Ms. Palmer's EMG's of her extremities, the totality of which demonstrated only mild carpal tunnel syndrome in her right wrist (Exh. B7F, p. 6, 13). Notably, Ms. Palmer told him that her back injections were not helping her pain levels (Exh. B7F, p. 14, 20). However, Dr. Kotob's records indicate that Ms. Palmer actually obtained significant relief following the injections (Exh. B4F, p. 6, 17). Because the record does not support his opinion, I accord Dr. Jilani's opinion very little weight.

(TR 23-24.)

Plaintiff argues that the ALJ's assessment does not consist of good reasons for discounting Dr. Jilani's opinion, does not discuss the regulatory factors, and selectively discusses evidence that favors the ALJ's conclusion. (Docket no. 14 at 12-14 (citing *Lowery v. Comm'r, Soc. Sec. Admin.*, 55 F. App'x 333, 339 (6th Cir. 2003) ("[A]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.") (citations omitted)).)

Specifically, Plaintiff argues that while she presented in "mild" discomfort, the actual record indicates that only her upper and lower extremities have functional range of motion, but her neck and lower back have limited range of motion. (Docket no. 14 at 12 (citing TR 439, 449).) The examination findings cited by Plaintiff above are the same as those cited by the ALJ

in discounting Dr. Jilani's opinion, which are from an examination of Plaintiff that Dr. Jilani performed on the same date that he issued his opinion, September 8, 2014. (TR 449.) As Plaintiff indicates, during the examination, Dr. Jilani found that Plaintiff's range of motion in her neck and lower back was limited secondary to pain and stiffness and that the range of motion in her upper and lower extremities was within functional limits. (TR 449.) Although not explicitly stated, it is seemingly Plaintiff's position that the ALJ selectively discussed the record evidence in discounting Dr. Jilani's opinion by stating that Plaintiff exhibited normal range of motion. But the Court does not find the ALJ's failure to thoroughly discuss all of the examination findings regarding Plaintiff's range of motion in her assessment of Dr. Jilani's opinion to be a fundamental mischaracterization of the evidence sufficient to warrant remand of this matter, particularly in light of the Court's forthcoming finding that the ALJ provided other good reasons for discounting Dr. Jilani's opinion.

Plaintiff also argues that "[a]lthough the EMG demonstrates 'Mild' Carpal Tunnel of the Right Wrist, this does not equate to 'mild' pain and limitation of function." (Docket no. 14 at 12.) Plaintiff bases this argument on the fact that Dr. Jilani documented a positive Tinel's sign test at both of Plaintiff's wrists and elbows, and he found that the Phalen's sign test was positive on both sides. (*Id.* at 12-13.) Plaintiff cites authority that explains that Tinel's and Phalen's sign tests are used to determine whether a person *has* carpal tunnel syndrome; however, the authority cited does not indicate that the tests are used to determine the *severity* of the syndrome. (*Id.* at 12 n.1 (citing www.webmd.com/pain-management/carpal-tunnel/physical-exam-for-carpal-tunnel-syndrome).) Accordingly, Plaintiff does not demonstrate how the positive Tinel's and Phalen's sign tests are probative of the severity of her pain and limitation of function. Plaintiff provides no further evidence or authority to support her argument that mild EMG test results

9

cannot automatically be equated to mild limitations. Plaintiff's argument therefore fails in this regard.

Plaintiff further argues that the ALJ "takes a myopic view" by relying on the mild results of the EMG to discount Dr. Jilani's (and Dr. Ezzeddine's) opinion. (Docket no. 19 at 1-2.) Plaintiff argues that it is not as "'black and white' as the ALJ suggests, as you have to evaluate the symptoms as well as the signs and laboratory findings." (*Id*.) In assessing the medical opinion evidence, the ALJ is charged with, among other things, determining whether the opinion is supported by the clinical and laboratory diagnostic record evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Here, in accordance with the regulations, the ALJ compared the mild diagnostic EMG results to Dr. Jilani's opinion and determined that they did not support the limitations assessed by Dr. Jilani. The Court finds no reason to disturb the ALJ's determination in this regard.[1]

Next, Plaintiff argues that the ALJ's decision "distorts the record by selectively indicating" that Dr. Kotob's records reflect that Plaintiff actually obtained significant relief following her back injections. (Docket no. 14 at 13.) According to the relevant treatment records, including those cited by the ALJ and Plaintiff:

- December 4, 2013: Dr. Kotob reported that Plaintiff received a diagnostic lumbar ESI four weeks prior, "which provided good pain relief for her radicular pain; however her mechanical back pain persisted" (TR 351);

---

[1] The Court's conclusions reached in this paragraph and the previous paragraph apply equally to similar arguments made by Plaintiff regarding the ALJ's reliance on the EMG results to discount Dr. Ezzeddine's opinion. (*See* docket no. 14 at 15-16.)

10

- January 3, 2014: Dr. Kotob indicated that Plaintiff "denied that she never received any therapeutic effect from the diagnostic epidural steroid injection for over two days" (TR 349);

- February 5, 2014: Plaintiff told Dr. Jilani "that her injections ha[ve] not been working" (TR 438);

- March 12, 2014: Plaintiff told Dr. Kotob that she "received exceptional pain relief from diagnostic right and left lumbar medial branch blocks and from right-sided radiofrequency rhizotomy" (TR 344);

- April 29, 2014: Dr. Kotob stated, "On the twelfth of last month, [Ms. Palmer] received left-sided radiofrequency rhizotomy of medial branches L2-L3 and L4. Today the patient is telling me that she is still experiencing significant back pain with an element of weakness in her buttocks and legs, particularly when she is trying to do house chores and getting up the stairs. . . . The very initial procedure I provided to this patient was intralaminar lumbar epidural steroid injection and she reported no significant relief. The patient reported excellent back pain relief following diagnostic lumbar medial branch blocks. That is why she received the bilateral rhizotomy of the lumbar medial branches." (TR 342.)

- July 7, 2014: Plaintiff told Dr. Jilani that her injections "did not help[;] they would only work for a few days" (TR 444);

- August 25, 2014: Dr. Kotob reported that Plaintiff, "so far, has undergone bilateral lumbar radiofrequency rhizotomy and a series of three bilateral transforaminal epidural steroid injections. She achieved good pain relief following each of these procedures; however, her low back pain keeps returning, importantly following outdoor activities, such as lawn mowing" (TR 333).

A comprehensive review of these treatment records reveals that consistencies and inconsistencies exist among Plaintiff's reports regarding the efficacy of the injections administered by Dr. Kotob. Accordingly, the ALJ was not incorrect in discounting Dr. Jilani's opinion for the reason that it was based on information that was inconsistent with Dr. Kotob's records.

Although the ALJ did not explicitly evaluate each of the six regulatory factors in assessing Dr. Jilani's opinion as Plaintiff points out, the ALJ did substantively discuss the majority of the factors throughout her decision. For example, the ALJ discusses the nature and

extent of Plaintiff's relationship with Dr. Jilani, and notes Dr. Jilani's specialization as a physiatrist in the decision. (TR 20.) Additionally, the ALJ discusses the supportability of the opinion and its inconsistency with other record evidence in her assessment. (TR 23-24.) Moreover, any failure by the ALJ to discuss the requisite factors in assessing Dr. Jilani's opinion is harmless error, as the Court finds, in light of the discussion above, that the ALJ has met the goal of § 1527(c) by providing good reasons for assigning very little weight to Dr. Jilani's opinion, which are supported by the evidence in the case record, and are sufficiently specific to make clear to any subsequent reviewers the reasons for that weight. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006); *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The Court will therefore deny Plaintiff's Motion with regard to the ALJ's assessment of Dr. Jilani's opinion.

    b.  Tarek M. Ezzeddine, M.D.

Plaintiff treated with Tarek M. Ezzeddine, M.D. for her physical impairments on June 24, 2015 and July 29, 2015. (TR 994, 1002.) Dr. Ezzeddine rendered an opinion regarding Plaintiff's functional limitations (TR 989-90), which the ALJ assessed as follows:

> On July 29, 2015, Tarek Ezzeddine, M.D. completed a questionnaire on Ms. Palmer's behalf. He opined that Ms. Palmer could work just one hour per day. During that one hour, she could sit for thirty minutes and stand or walk for thirty minutes total. He simultaneously opined that, during an eight-hour workday, Ms. Palmer must be able to lie down every thirty minutes to one hour for about thirty to forty-five minutes at a time. Dr. Ezzeddine reported that Ms. Palmer could use her bilateral upper extremities for repetitive simple grasping and forward reaching. She could not engage in repetitive overhead reaching, pushing, pulling, or fine manipulation (Exh. B22F, p. 1-2). Dr. Ezzeddine's opinion is internally inconsistent. He first suggests that Ms. Palmer could only work one hour per day. He then went on to opine as to how often she would have to lie down during an eight-hour workday. Moreover, there is no objective evidence available to support his conclusion that Ms. Palmer is so restricted in her ability to use her bilateral upper extremities. Her EMG showed only mild carpal tunnel syndrome of the right wrist (Exh. B7F, p. 13). Ms. Palmer testified her symptoms improved following surgery. Dr. Ezzeddine himself appears to have only ever examined

12

> Ms. Palmer twice. His exam notes do not provide a basis for his findings (Exh. B23F). Moreover, the form he completed contains significant errors that render a portion of the questionnaire entirely illogical. However, he answered the questions regardless. Consequently, a portion of his opinion suggests that Ms. Palmer could use her left lower extremity for repetitive "operating" and "foot/leg." She could not use either lower extremity for repetitive "controls" (Exh. B22F, p. 2). Dr. Ezzeddine's endeavor to complete the questionnaire in its entirety despite these several stark errors suggests that his own attention was perhaps not properly focused. For these reasons, I accord this opinion no weight.

(TR 24.)

Plaintiff first challenges the ALJ's finding that Dr. Ezzeddine's opinion is internally inconsistent. (Docket no. 14 at 15.) Plaintiff argues that while Dr. Ezzeddine opined that Plaintiff could only work one hour per day, his opinion regarding the amount of time that Plaintiff would need to lie down was conditioned on *if* she was placed in a competitive eight-hour workday. (*Id*. (citing TR 989).) Plaintiff argues that this is clearly not internally inconsistent. But the Court finds that it is also not clearly consistent. Accordingly, the Court declines to second guess the ALJ's interpretation of this opinion evidence.

Plaintiff also challenges the ALJ's reasoning that Dr. Ezzeddine had only examined Plaintiff twice and the ALJ's suggestive reasoning that Dr. Ezzeddine was not properly focused when completing the medical opinion form due to the fact that he completed a portion of the form that contained illogical errors. (Docket no. 14 at 16-17.) But both of these items are valid bases for discounting Dr. Ezzeddine's opinion. Notably, the length of the treatment relationship and the frequency of examination is one of the factors that an ALJ must consider in determining the weight to assign to a medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). Plaintiff argues in her reply brief that the ALJ's "two visits and you're out" rule is too simplistic because it is not the only factor that should be analyzed in evaluating opinion evidence; instead, the ALJ should review the evidence as a whole. (Docket no. 19 at 3.) Plaintiff further argues

13

that the ALJ gave overinflated significance to the typographical errors on the medical opinion form. (*Id*. at 4.) Had the ALJ discounted Dr. Ezzeddine's opinion solely on the fact that he had only examined Plaintiff twice, or solely on the fact that he completed a portion of the medical opinion form that contained an illogical typographical error, Plaintiff's argument might hold some weight. However, as discussed above, the ALJ named several reasons for assigning no weight to Dr. Ezzeddine's opinion, which reasons are supported by substantial evidence. Accordingly, the Court will deny Plaintiff's Motion in this regard.

### 2. *The ALJ's Assessment of Plaintiff's RFC*

Plaintiff argues that it is unclear how the ALJ arrived at the determination that Plaintiff has the RFC to perform a restricted range of light work because the ALJ's decision does not comply with the "narrative discussion" requirement of SSR 96-8p. (Docket no. 14 at 18-20.) The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 (July 2, 1996). It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id*. He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.* "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by

14

and not inconsistent with the other substantial evidence of record. However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

Courts in this district and circuit have held that the ALJ's failure to link the evidence to the ultimate RFC requires a reversal and sentence four remand: "An ALJ . . . must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Meyer v. Comm'r of Soc. Sec.*, No. 10-cv-12963, 2011 WL 3440152, at *9 (E.D. Mich. Jun. 9, 2011) (quoting *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003)). The *Meyer* court further found that it "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Id.* (citations omitted). *See also Steadman v. Comm'r of Soc. Sec.*, No. 1:10-cv-801, 2011 WL 6415512, at *12 (S.D. Ohio Nov. 14, 2011) ("Simply listing the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the functional limitations ultimately imposed in the RFC is insufficient to meet the 'narrative discussion' requirement of SSR 96-8.") "'Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.,* 251 F.3d 153 (table), No. 00–1995 (3d Cir. Dec. 19, 2000)). "'[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.*

Here, the ALJ recited portions of Plaintiff's testimony and medical record, provided a detailed explanation regarding her finding that Plaintiff's allegations were not fully credible, and

15

presented a thorough assessment of the opinion evidence. (TR 19-25.) The ALJ then stated, with regard to Plaintiff's physical RFC:

> The residual functional capacity stated above accurately reflects Ms. Palmer's limitations. The record shows that Ms. Palmer's physical impairments limit her ability to perform work-related activity. Taking the medical opinions and the objective medical evidence concerning Mr. Palmer's physical impairments into account, I have determined that she can perform light work.

(TR 25.) The ALJ followed this paragraph with substantially similar paragraphs regarding Plaintiff's mental RFC and the combined RFC. (TR 25.)

While the ALJ did present a thorough recitation of the record evidence and complete assessments of the opinion evidence and Plaintiff's credibility, her conclusory and boilerplate explanations cited above do not constitute a narrative discussion that explains how the evidence represents Plaintiff's RFC. The Court is at a loss as to how the ALJ reached the RFC, particularly where she did not rely upon any medical opinion evidence regarding Plaintiff's physical impairments. Without a sufficient explanation, the Court is unable to conduct a meaningful review of the ALJ's decision to determine whether it is supported by substantial evidence. The ALJ's failure to provide a narrative discussion of how the evidence supports the RFC therefore requires remand. On remand, the ALJ should address and provide support for her RFC assessment in accordance with SSR 96-8p.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [14] is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's Motion for Summary Judgment [18] is **DENIED**. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a proper analysis and discussion of Plaintiff's RFC in accordance with SSR 96-8p.

Dated: May 2, 2017         s/ Mona K. Majzoub
                           MONA K. MAJZOUB
                           UNITED STATES MAGISTRATE JUDGE


## **PROOF OF SERVICE**

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: May 2, 2017         s/ Lisa C. Bartlett
                           Case Manager